IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTATE OF DAVID SIPPEY, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 17-227 |
| | ) |
| v. | ) |
| | ) Judge Cathy Bissoon |
| METROPOLITAN GROUP PROPERTY AND CASUALTY INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

### I. MEMORANDUM

Pending before the Court is a Motion to Dismiss filed by Defendant Metropolitan Group Property and Casualty Insurance Company ("Metropolitan" or "Defendant") (**Doc. 12**), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Defendant's Motion will be GRANTED IN PART AND DENIED IN PART.

### A. BACKGROUND[1]

Plaintiffs' claims arise out of a tragic automobile accident wherein David Sippey, husband of Plaintiff Kellie Sippey and father of their minor children, was struck by an automobile on July 17, 2015, in South Carolina when he attempted to retrieve a luggage carrier that had become detached from the roof of his vehicle. Doc. 11 ¶¶ 11-13, and 15. Prior to

---

[1] The following background facts are taken from Plaintiff's Amended Complaint (Doc. 11). Because the case presently is before this Court on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all allegations in the Amended Complaint and all reasonable inferences that can be drawn therefrom. See Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). In addition, the Court views all well pled factual averments and reasonable inferences in the light most favorable to the non-moving party. Id.

exiting the vehicle and entering South Carolina Highway 20, David Sippey had been operating a 2010 Dodge Grand Caravan insured by Metropolitan under Policy No. 7034392340 issued to John J. McCluskey and Marilyn J. McCluskey. Id. ¶¶ 3, 10. John J. McCluskey and Marilyn J. McCluskey are Kellie Sippey's parents. Id. ¶ 3.

The subject Metropolitan Policy is attached to Plaintiffs' Amended Complaint. See Doc. 11-1. It shows that the Dodge Grand Caravan was listed on the Policy that was in effect at the time of the accident. Although not a named insured under the subject Policy, Kellie A. Sippey is listed as a "household driver." Doc. 11 ¶ 3. The Policy also states that Kellie A. Sippey is "married." Id. ¶ 6.

The relevant Policy language states:

**PENNSYLVANIA
UNDERINSURED MOTORISTS COVERAGE
ENDORSEMENT**

The following is added:

**UNDERINSURED MOTORISTS COVERAGE**

**ADDITIONAL DEFINITIONS FOR THIS COVERAGE**

A. The following **GENERAL DEFINITIONS** are changed for this coverage only:

**INSURED** means:
1. **you** or any **relative**.
2. any other person occupying your covered auto.
3. any person for damages that person is entitled to recover because of **BI**[2] to which this coverage applies sustained by a person in 1. or 2. above.

. . . .

**COVERAGE EXCLUSIONS**

. . . .

---

[2] "BI" stands for "Bodily Injury," which is defined in the Policy as "any physical injury to a person and any resulting sickness, disease or death." See Policy, Doc. 11-1 at 8.

2

> **G. We** do not cover a relative who owns, leases or has available for their regular use, an **auto** which is insured for underinsured motorists coverage on a primary basis under any other policy.
>
> . . . .

**LIMIT OF LIABILITY**

> A. The limit of liability shown in the Declarations for "each person" is the most **we** will pay for all damages due to **BI** to any one person as the result of any one accident. This includes all damages sustained by any other person including delay damages as a result of that **BI**. Subject to this limit for "each person", the limit shown in the Declarations for 'each accident' is the most **we** will pay for all damages arising out of **BI** sustained by two or more persons resulting from any one accident.
>
> If a single limit is shown in the Declarations for 'each accident' this is the most **we** will pay for any one accident.
>
> *For **BI** sustained by **you** or any **relative**, if the Declarations shows that Underinsured Motorists Coverage limits have been stacked, then the limit of liability shown in the Declarations for Underinsured Motorists Coverage for 'each person', multiplied by the number of **covered autos** shown in the Declarations, is the most **we** will pay for all damages.*
>
> . . . .

See Doc. 11-1 at 33-34 (emphasis added).

In the General Definitions Section of the Policy, the word "relative" is defined as follows:

> **U. Relative** means a person, other than **you**, who is a resident of **your** household, and is related to **you** by blood, marriage, civil union, domestic partnership or adoption. This includes a ward, stepchild, foster-child and **your** children that are residents of **your** household who are living elsewhere. **We** may require reasonable proof of residence in **your** household.

See Doc. 11-1 at 10.

The McCluskeys renewed their auto insurance policy with the Defendant on December 18, 2014. Doc. 11 ¶ 4. They allege that they provided Defendant with copies of driver's licenses of those listed on the policy, including Kristy McCluskey and Kellie A. Sippey. Id. ¶ 7. The McCluskeys further allege that they paid premiums for years for stacked coverage believing that their daughters were entitled to stacked coverage because they are relatives and identified as

3

drivers on the policy. Id. ¶ 20. They contend that Defendant never informed them that stacked coverage required that a relative be a "resident." Id. ¶ 21.

B. ANALYSIS

Plaintiffs claim that Defendant breached its obligation to pay stacked underinsured motorist benefits to Kellie Sippey.[3] Doc. 11 ¶¶ 34-41. Defendant argues that Kellie Sippey is entitled only to non-stacked per-accident policy limits, since she does not reside with the named insureds, John J. McCluskey and Marilyn McCluskey, and thus does not qualify as a "relative" under the Policy.

"A court's function when interpreting an insurance policy under Pennsylvania law is to 'ascertain the intent of the parties as manifested by the language of the written instrument.'" Ramara, Inc. v. Westfield Insurance Co., 814 F.3d 660, 676 (3d Cir. 2016) (quoting Am. Auto. Ins. Co. v. Murray, 658 F.3d 311, 320 (3d Cir. 2011)); see also Duda v. Standard Insurance Co., 649 Fed. Appx. 230, 238-239 (3d Cir. 2016) ("Pennsylvania case law dictates that the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured and in most cases, the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations."). "In performing the foregoing analysis, the court must evaluate the terms of the policy to determine whether they are ambiguous." Devcon International Corp. v. Reliance Insurance Co., 609 F.3d 214, 218 (3d Cir. 2010) (citing Lucker Mfg. v. Home Ins. Co., 23 F.3d 808, 814 (3d Cir. 1994)). A court must read the policy "as a whole and construe it according to the plain meaning of its terms." Ramara, 814 F.3d at 677

---

[3] Defendant argues that "Plaintiffs do not explain how David Sippey could be elevated to named insured status because his wife was listed as a 'household driver.'" Doc. 13 at 11. However, the Amended Complaint contends that "Defendant breeched [sic] its obligation to pay the uninsured [sic] motorist's bodily injury stacked provision to *Kellie Sippey*," not to David Sippey. See Doc. 11 ¶ 40 (emphasis added).

(quoting C.H. Heist Caribe Corp. v. Am. Home Assurance Co., 640 F.2d 479, 481 (3d Cir. 1981)).  A court construes commonly used words and phrases "in their natural, plain, and ordinary sense, with [the] court free to consult a dictionary to inform its understanding of terms." Id. (citing Am. Auto. Ins. Co., 658 F.3d at 320–21).  If the court finds that the policy is unambiguous, it must give effect to the terms as stated on the face of the policy.  Devcon, 609 F.3d at 218.  But if those terms are open to more than one interpretation, they are regarded as ambiguous.  Ramara, 814 F.3d at 677 (citing Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999)).  "Ambiguous provisions in an insurance policy must be construed against the insurer and in favor of the insured; any reasonable interpretation offered by the insured, therefore must control."  Id.; Regent Insurance Co. v. Strausser Enterprises, 902 F.Supp.2d 628636 (E.D. Pa. 2012).

Here, the Court finds that the language of the Policy is ambiguous.  As noted, the Policy states that a "relative" of the named insured is entitled to stacked underinsured motorist coverage, and that a "relative" includes "a ward, stepchild, foster-child and [the named insured's] child[] that [is a] resident[] of [the named insured's] household who [is] living elsewhere."  See Doc. 11-1 at 10, 33-34.  Notably, the word "child" is not defined in the Policy.  Thus, the Court must read this word "in its natural, plain, and ordinary sense" and is free to "consult a dictionary to inform its understanding."  Ramara, 814 F.3d at 677.  The Court notes that the Oxford Dictionary defines the word "child" in multiple ways, including, *inter alia*: (1) "A young human being below the age of puberty or below the legal age of majority;" and (2) "A son or daughter of any age."  See https://en.oxforddictionaries.com/definition/child.[4]  Although Defendant would

---

[4] The Merriam-Webster Dictionary also defines a "child" as, among other things, "a son or daughter of human parents," again with no limitation as to age.  See https://www.merriam-webster.com/dictionary/child.

like the Court to read the word "child" in the above provision under the first definition, *i.e.*, as a minor, the Court could just as easily use the second definition, *i.e.*, "a son or daughter of any age." Under this second definition, the word "relative" would include Kellie Sippey, as she is, in fact, the "child" of the named insureds, John J. McCluskey and Marilyn McCluskey, and, while still a member of their household, is "living elsewhere." This finding is further buttressed by the fact that the Policy specifically names Kellie Sippey as a "household driver," suggesting that, although she may "live elsewhere," she is in fact still a "resident" of the named insureds' household. Thus, construing the Policy in favor of Plaintiffs, the Court finds that Defendant breached its contract with the McCluskeys when it failed to treat Kellie Sippey as a "relative" and pay her stacked underinsured motorist benefits.[5] Accordingly, Defendant's motion to dismiss Count I will be denied.

The Court, however, will grant Defendant's motion to dismiss Counts II through IV of the Amended Complaint. First, the Court finds that, as currently pled, the Amended Complaint fails to state a statutory "bad faith" claim against Defendant. Pennsylvania law allows an insured

---

[5] Defendant argues that, even if Kellie Sippey is deemed a "relative" under the Policy, she is precluded from coverage under the exclusion set out in paragraph G of the Policy's Underinsured Motorists Coverage section, which states: "We do not cover a relative who owns, leases or has available for their regular use, an auto which is insured for underinsured motorists coverage on a primary basis under any other policy." Doc. 13 at 23-25. Defendant cites to the Petition for Leave to Settle and Compromise Death Action filed by David Sippey's Estate, which states that "[t]he decedent . . . had a personal automobile insurance policy through Travelers with a UM/UIM policy limits of $100,000/$300,000." See Petition, Doc. 12-1, ¶ 5. Although the Court may consider this publicly-filed document in resolving a Motion to Dismiss, see Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006), it does not find that the document is dispositive of the Plaintiffs' breach of contract claim. Specifically, the Petition does not state that David Sippey was insured under the Traveler's policy "for underinsured motorists coverage *on a primary basis*." Furthermore, the Petition does not state that *Kellie Sippey* was insured under this policy. Thus, while Defendant's argument regarding the applicability of this exclusion provision ultimately may be meritorious, further factual investigation is needed before the Court can rule on the issue.

6

party to receive damages and other relief if the insurer acted in bad faith toward the insured party. 42 Pa.C.S.A. § 8371. Generally, to prevail on a bad faith claim, a plaintiff must establish that: "1) the insurer did not have a reasonable basis for denying coverage and 2) the insurer knew or recklessly disregarded its lack of a reasonable basis when it denied coverage." Post v. St. Paul Travelers Ins. Co., 609 F. Supp. 2d 382, 385 (E.D. Pa. 2009) (citing Greene v. United Servs. Auto. Ass'n, 936 A.3d 1178, 1189 (Pa. Super. 2007)). Under Pennsylvania law, the presence or absence of bad faith does not turn on whether the insurer was legally correct in denying an insured's claim. Jung v. Nationwide Mut. Fire Ins. Co., 949 F. Supp. 353, 359–60 n. 7 (E.D. Pa. 1997). "If it did, the need for an independent analysis of an insured's bad faith claim would disappear, as the applicable section 8371 claim would turn specifically on the underlying coverage determination." Employers Mut. Cas. Co. v. Loos, 476 F. Supp. 2d 478, 496 (W.D. Pa. 2007). Here, Plaintiffs' bad faith claim is based solely on Defendant's denial of stacked underinsured motorist benefits to Kellie Sippey. See Doc. 11 ¶¶ 42-47. However, Defendant's coverage decision, even if unreasonable, does not give rise to a section 8371 claim, absent some allegation that Defendant knew or recklessly disregarded its lack of a reasonable basis when it denied coverage. Accordingly, the Court will grant Defendant's motion as to Count II and will dismiss this claim without prejudice.

For the same reason, the Court will grant Defendant's motion to dismiss Plaintiffs' fraud claim at Count III. Plaintiffs' fraud claim, like their "bad faith" claim, is based entirely on Defendant's denial of stacked underinsured motorist benefits to Kellie Sippey. Plaintiffs have pled no facts—let alone sufficient facts to satisfy the heightened pleading standard set forth in

F.R.C.P. 9(b)—showing that Defendant engaged in any intentional fraud. Accordingly, Plaintiffs' fraud claim will be dismissed without prejudice.[6]

Finally, for the reasons stated by Defendant in the Motion to Dismiss, the Court will dismiss Plaintiffs' unjust enrichment claim with prejudice. Courts in Pennsylvania hold that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract. Wilson Area Sch. Dist. v. Skepton, 586 Pa. 513, 520, 895 A.2d 1250, 1254 (2006). Given that there is a written Policy in this case, Plaintiffs' claim for unjust enrichment fails as a matter of law.

## II.     ORDER

For the reasons stated above, Defendant's Motion to Dismiss (Doc. 12) is GRANTED IN PART AND DENIED IN PART. Consistent with the foregoing, the Court hereby DISMISSES WITHOUT PREJUDICE Counts II and III of the Amended Complaint, and DISMISSES WITH PREJUDICE Count IV of the Amended Complaint.

If Plaintiffs wish to file a Second Amended Complaint, they must do so on or before December 12, 2017. Defendant must answer or otherwise plead fourteen (14) days thereafter. Should Plaintiffs not file a Second Amended Complaint by December 12, 2017, the Court will assume that they intend to pursue only the breach of contract claim against Defendant.

---

[6] As it is unclear whether leave to amend would be futile, dismissal of Counts II and III will be without prejudice. However, given that Plaintiffs already once amended their pleadings, they must be prepared to make a last, best effort to state viable "bad faith" and fraud claims against Defendant in a Second Amended Complaint, as the Court will not afford further opportunity for amendment. See Taylor v. Pilewski, 2008 WL 4861446, *3 (W.D. Pa. Nov. 7, 2008) ("[the c]ourt need not provide endless opportunities" for amendment, especially where such opportunity already has been enjoyed); Houser v. Postmaster Gen. of U.S., 573 F. App'x 141 (3d Cir. 2014) (affirming the Court's dismissal of a plaintiff's second amended complaint with prejudice, where the Court found that "[i]t [] would be inequitable to require Defendant, who already once has exhaustively and successfully defended Plaintiff's grievances, to respond to a continuous stream of formal and informal attempted amendments").

IT IS SO ORDERED.

December 1, 2017                                         s/Cathy Bissoon
                                                         Cathy Bissoon
                                                         United States District Judge


cc (via ECF email notification):

All counsel of record